Filed 6/16/16  P. v. Carter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRAD CARTER,<br><br>    Defendant and Appellant. | D068655<br><br><br>(Super. Ct. No. SCE346862) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura Halgren, Judge.  Affirmed.

Lewis A. Wenzell, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

INTRODUCTION

In February 2015, Brad Carter pleaded guilty to one count of corporal injury upon a spouse or cohabitant. (Pen. Code, § 273.5, subd. (a); count 2.)[1] Carter admitted he "willfully [and] unlawfully inflicted corporal injury resulting in a traumatic condition" upon his girlfriend. Other counts, including an attempted murder count, were dismissed as part of the agreement. Pursuant to the plea agreement, the court suspended imposition of a sentence and placed Carter on probation for three years with a condition he serve 365 days in custody. As a condition of probation, the court issued a protective order requiring him to stay away from the victim, his girlfriend.

In July 2015, Carter admitted he violated his probation and waived his right to an evidentiary hearing. Within days of being released from custody, Carter returned to the home he shared with the victim and had contact with her. The court revoked probation and sentenced him to the middle term of three years in state prison.

Carter appeals. His appointed appellate counsel filed a brief requesting we independently review the record for error. (See *People v. Wende* (1979) 25 Cal.3d 436, 441-442.) Having done so and having identified no reasonably arguable appellate issues, we affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## BACKGROUND[2]

### A

In January 2015, El Cajon Police Department officers "responded to a residence regarding a report of a chronic 'male/female' disturbance. The 911 caller reported she heard the female . . . screaming for help. Upon arrival, the officers heard the victim screaming. They followed the screams and arrived at a condominium unit. An officer looked over the fence and saw the defendant kneeling over the victim and strangling her. The officer heard the victim yell[,] 'No, please just stop!' The officers entered the unlocked residence and observed the defendant kneeling on top of the victim, who was on the floor on her back. The defendant was strangling the victim . . . . The defendant was removed from the victim. She was crying, gasping for air and her hands were shaking. Her shirt was ripped, exposing her breasts, and there was smeared blood on various places on her body. A missing piece of the victim's shirt was found nearby."

After Carter was removed from the residence, a police officer found a rifle with blood on it and the safety in the fire position, a magazine for the rifle (loaded with one bullet), a handgun, and an open folding knife stuck into the floor in a bedroom.

The victim reported she had been drinking during the evening and had gone to bed. She said she was awakened by Carter pulling her out of bed by her feet. "He drug her down the stairs by her feet and punched her in the face . . . . She said he was going to kill her as he was beating her . . . ."

---

[2]     We take the factual background from the probation officers' reports. There was no preliminary examination since Carter pleaded guilty on the amended felony complaint.

A neighbor reported she heard shouting, which escalated to violent screams of "Help me" and "He's going to kill me." The neighbor called 911 when she became afraid the victim could not fend for herself and sounded as though she was being choked. The neighbor had heard similar incidents in the past "but 'this one sounded more violent than in the other times.' "

B

In June 2015, Carter was rearrested after he admitted to a probation officer he had been residing in the home with the victim since he was released from custody. He acknowledged he was aware it was a violation of the protective order, but stated, "Where am I supposed to live. It's my house." He also claimed he was the main caretaker for the victim and needed to be there to assist with her daily needs.

At the probation revocation hearing, his attorney represented Carter was only out of custody for six days when he told the probation officer he had gone to the house to get his glasses. His counsel noted he had taken an anger management class while in custody and asked he be given another opportunity for probation. His counsel also noted the victim did not want the protective order.

The court noted the difference between Carter's counsel's accounting of the probation violation and that of the probation officer's report. The court also indicated Carter was fully advised when he was granted probation and the protective order was issued that he was not to be in the home with the victim. "I think it's very clear to him that he wasn't to be at the house with the victim." The court also expressed concerns about the seriousness of the underlying facts of the case noting, "if the police hadn't

4

intervened, she could have died."  For that reason, the court determined a prison sentence was appropriate.

## DISCUSSION

Carter's appointed appellate counsel filed a brief summarizing the facts and proceedings below.  Counsel presented no argument for reversal and instead requested we review the record for error as mandated by *People v. Wende, supra,* 25 Cal.3d at pages 441-442.  To aid our review, and consistent with *Anders v. California* (1976) 386 U.S. 738, 744, counsel identified two possible appellate issues:

1.    Whether the court abused its discretion in revoking Carter's probation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 [holding § 1203.2, subd. (a) gives trial court "very broad discretion in determining whether a probationer has violated probation" and confers "great flexibility upon judges making the probation revocation determination"].)

2.    Whether the court abused its discretion in sentencing Carter.  (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978 [" 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' "].)

We granted Carter permission to file a supplemental brief on his own behalf.  He did not do so.

5

As requested by counsel, we reviewed the record for error and did not find any reasonably arguable appellate issues. Carter has been competently represented by counsel on this appeal.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.